1  Mark T. Drooks - State Bar No. 123561
       mtd@birdmarella.com
2  Jessica S. Chen - State Bar No. 265943
       jc@birdmarella.com
3  BIRD, MARELLA, BOXER, WOLPERT,
       NESSIM, DROOKS & LINCENBERG, P.C.
4  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
5  Telephone: (310) 201-2100
   Facsimile: (310) 201-2110
6
7  Attorneys for Respondent Solicitors
   Regulation Authority
8
                **UNITED STATES DISTRICT COURT**
9
      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
10
11 *In re*                          | CASE NO. CV 12-10310 DSF (Ex)
12 Application of                   | **RESPONDENT SOLICITORS
                                       REGULATION AUTHORITY'S
13 SHAHROKH MIRESKANDARI,           | OPPOSITION TO APPLICANT'S
                                       MOTION FOR
14      Applicant,                  | RECONSIDERATION OF ORDER
                                       DATED JANUARY 8, 2013**
15
16                                  | Date:   February 25, 2013
   RE APPEAL IN THE:               | Time:   1:30 p.m.
17 HIGH COURT OF JUSTICE,           | Crtrm.: 840
   QUEEN'S BENCH DIVISION
18 ADMINISTRATIVE COURT,            | Assigned to Hon. Dale S. Fischer
   LONDON ENGLAND
19
   SHAHROKH MIRESKANDARI,
20
        Appellant.
21
   SOLICITORS REGULATION
22 AUTHORITY,
23      Respondent.
24
25
26
27
28

## I.    INTRODUCTION

Applicant Shahrokh Mireskandari has no colorable basis for seeking reconsideration of this Court's January 8, 2013 order and has brought this motion in an apparent attempt to delay and improperly reargue his application for leave to serve a subpoena on Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, P.C. ("Bird Marella"), counsel for Respondent Solicitor Regulation Authority ("SRA"), well after this Court has already dismissed this proceeding.

Mireskandari argues that a ruling issued by a different court with respect to a different subpoena that Mireskandari sought to serve on a different party purportedly has collateral estoppel effect on this Court's ruling. This argument is not only untenable, but also untimely, since it is based on the purported preclusive effect of a court order that was issued almost three weeks before this Court's January 8 order. Mireskandari therefore had ample time to raise his collateral estoppel argument but failed to do so before this Court dismissed his application.

Mireskandari also claims that this Court demonstrated a manifest disregard of material facts on the record when it denied his application, but fails to show any error committed by the Court, and instead merely reargues points already made in his application and supporting papers filed before this Court's January 8 order.

Reconsideration is an extraordinary remedy that may only be granted in highly unusual circumstances. Mireskandari presents only frivolous arguments that do not approach the high standard required for granting reconsideration. The motion should be denied without argument.

## II.    BACKGROUND

On December 3, 2012, Mireskandari filed two applications, one in the Southern District of California and one before this Court, seeking discovery under 28 U.S.C. § 1782(a), purportedly in connection with appellate proceedings now pending in the United Kingdom. *See* Dkt. No. 1; Declaration of Mark T. Drooks ("Drooks Decl."), ¶ 2, Ex. A.  The application filed in this Court sought leave to

1 serve a subpoena for documents on Bird, Marella, Boxer, Wolpert, Nessim, Drooks

2 & Lincenberg, P.C. ("Bird Marella"), counsel for the SRA. The application filed in

3 the Southern District sought leave to serve a subpoena for testimony and documents

4 on Dr. Joseph Scoma ("Scoma Application"). Dr. Scoma was an independent

5 medical expert who had opined that Mireskandari was healthy enough to travel to

6 London to participate in bar disciplinary proceedings pending against him. On

7 December 20, 2012, the Southern District granted the Scoma Application ("Scoma

8 Ruling"). Drooks Decl., ¶ 3, Ex. C.

9      Nineteen days after the Scoma Ruling, on January 8, 2013, this Court denied

10 Mireskandari's application for leave to serve a subpoena on Bird Marella and

11 dismissed this proceeding. Before this Court issued its January 8 order,

12 Mireskandari filed a notice of the Scoma Ruling before this Court, and both parties

13 discussed the Scoma Ruling in briefing before this Court. *See* Dkt. No. 17; Dkt. No.

14 18 at 5-7; Dkt. No. 19 at 4 n.1.

15 **III.**    **ARGUMENT**

16     **A.**    **The Legal Standard.**

17      Reconsideration is an "extraordinary remedy, to be used sparingly in the

18 interests of finality and conservation of judicial resources." *Kona Enterprises, Inc.*

19 *v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "[A] motion for

20 reconsideration should not be granted, absent highly unusual circumstances, unless

21 the district court is presented with newly discovered evidence, committed clear

22 error, or if there is intervening change in controlling law." *Id.* (internal citation

23 omitted). Local Rule 7-18 supplements this rule and provides that a motion for

24 reconsideration:

25      may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of

26      reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new

27      material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the

28      Court before such decision.

2

1 Moreover, "[n]o motion for reconsideration shall in any manner repeat any oral or

2 written argument made in support of or in opposition to the original motion."  Local

3 Rule 7-18.

4      A motion for reconsideration "may *not* be used to raise arguments or present

5 evidence for the first time when they could reasonably have been raised earlier in

6 the litigation." *Kona*, 229 F.3d at 890 (emphasis in original); *see also Bhatnagar v.*

7 *Surrendra Overseas Ltd*., 52 F.3d 1220, 1231 (3rd Cir. 1995) ("reargument should

8 not be used as a means to argue new facts or issues that inexcusably were not

9 presented to the court in the matter previously decided.") (internal quotes omitted).

10    **B.**    **Mireskandari's Collateral Estoppel Argument Is Untimely and**

11        **Without Merit.**

12        **1.**    **Mireskandari Had the Opportunity to Argue Collateral**

13            **Estoppel Before This Court Issued Its Ruling, but Failed to**

14            **Do So.**

15      Mireskandari argues that reconsideration is proper because the Scoma Ruling

16 is a material difference in fact or law that could not have reasonably known to him

17 at the time of this Court's ruling.  Mot. at 4.  This argument is patently false, since

18 the Scoma Ruling was issued on December 20, 2012, almost three weeks before this

19 Court's January 8, 2013 ruling.  Mireskandari therefore had ample opportunity to

20 raise his argument about any perceived preclusive effect of the Scoma Ruling before

21 this Court.  Not only did Mireskandari have the ***opportunity*** to address the Scoma

22 Ruling, but he in fact ***did*** address the Scoma Ruling by filing: (1) a notice of the

23 Scoma Ruling before this Court on December 20, 2012, the same date as the Scoma

24 Ruling, and (2) an *ex parte* application before this Court on December 21, 2012, the

25 day after the Scoma Ruling was issued.  *See* Dkt. Nos. 17 & 18.  In both filings,

26 Mireskandari specifically stated that the Southern District granted Mireskandari's

27 Scoma Application and allowed Mireskandari to serve a subpoena on Dr. Scoma,

28 and attached a copy of the Scoma Ruling to the filing.  *See* Dkt. No. 17; Dkt. No. 18

1    at 3-4.  Nowhere in his motion did Mireskandari argue that the Scoma Ruling had

2    any preclusive effect on this Court.  Because Mireskandari could have raised his

3    collateral estoppel argument earlier and failed to do so, he is precluded from raising

4    that argument here.

5        Mireskandari makes much of the deadline for the SRA to appeal the Scoma

6    Ruling, but notably cites no case law supporting his contention that an order is not

7    final for collateral estoppel purposes until the order is no longer appealable.  To the

8    contrary, Mireskandari's own cited case holds that "a final judgment retains all of its

9    res judicata consequences pending decision of the appeal."  Mot. at 4 (citing *Tripati*

10   *v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988)).  Indeed, "the law is well settled

11   that the pendency of an appeal has no effect on the finality or binding effect of a

12   trial court's holding."  *SSIH Equip., S.A. v. U.S. International Trade Comm'n*, 718

13   F.2d 365, 370 (Fed. Cir. 1983); *see also* 18 C. Wright, A. Miller & E. Cooper,

14   Federal Practice and Procedure § 4433 (2012) ("it is likewise held in federal courts

15   that the preclusive effects of a lower court judgment cannot be suspended simply by

16   taking an appeal that remains undecided").  Thus, the Scoma Ruling was "final" for

17   the purposes of collateral estoppel regardless of whether the SRA appealed the

18   Ruling, and Mireskandari could have raised his collateral estoppel argument

19   immediately after the Scoma Ruling was issued.[1]

### 2.    Collateral Estoppel Does Not Apply.

21       Even if Mireskandari's collateral estoppel argument were proper—which it is

22   not—the Scoma Ruling has no preclusive effect on this Court's ruling.  "Issue

23   preclusion prohibits re-litigation of issues ***actually litigated*** and ***necessarily***

24   ***determined*** by a court. If the decision could have been rationally grounded upon an

---

[1]    Even if the Scoma Ruling were not final until after the deadline for its appeal, Mireskandari could have asked the Court to delay deciding this application to provide sufficient time for Mireskandari to raise the collateral estoppel issue after the deadline, but he failed to do so.

RESPONDENT SOLICITORS REGULATION AUTHORITY'S OPPOSITION TO APPLICANT'S MOTION FOR RECONSIDERATION OF ORDER DATED JANUARY 8, 2013

1    issue other than that which the defendant seeks to foreclose from consideration,

2    issue preclusion does not prohibit relitigation of the asserted issue." *Operating*

3    *Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1339 (9th Cir. 1988) (emphasis

4    added). In *Operating Engineers*, the Court held that there was no preclusive effect

5    where two lawsuits involved the interpretation of two separate resolutions applicable

6    to two different entities, even though the two resolutions contained identical

7    language. *Id.* at 1339-40.

8         Similar to *Operating Engineers*, the two rulings here involve two different

9    applications brought in two separate court proceedings seeking leave to serve two

10   different subpoenas on two different parties to obtain different discovery. Judge

11   Bartick's findings in the Scoma Ruling are limited to the Scoma Application, such

12   as whether the subpoena was overly burdensome and whether Mireskandari was

13   attempting to circumvent English evidence-gathering restrictions by serving a

14   subpoena on Dr. Scoma. Drooks Decl., ¶ 3, Ex. C at 5-6. The Scoma Ruling does

15   not address Bird Marella or the subpoena at issue in this case. Seeking discovery

16   from Dr. Scoma—the expert in the disciplinary proceedings brought by Respondent

17   SRA against Mireskandari in the UK—is obviously very different from seeking

18   discovery from Bird Marella—Respondent SRA's counsel who had no substantive

19   involvement in any proceeding involving Mireskandari in the UK. Since Judge

20   Bartick never considered or made a ruling based on issues specific to the Bird

21   Marella subpoena, the Scoma Ruling cannot have preclusive effect on this Court.

22        Moreover, 28 U.S.C. § 1782(a) allows a district court discretion to weigh

23   several factors to determine whether discovery is appropriate in a specific situation.

24   *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 261, 264-66 (2004)

25   (Section 1782(a) "leaves the issuance of an appropriate order to the discretion of the

26   court which, in proper cases, may refuse to issue an order or may impose conditions

27   it deems desirable.") (internal citation omitted). Thus, even if the Scoma Ruling

28   determined certain issues that are binding on this Court—which it did not—

1  collateral estoppel still would not apply.  Both Judge Bartick and this Court

2  exercised their independent discretion and issued rulings after weighing the various

3  factors specific to the respective applications before them.  Mireskandari's argument

4  that Judge Bartick's ruling on a separate subpoena based on different facts limits

5  this Court's exercise of its discretion is plainly frivolous.[2]

6  **C.    Mireskandari's Argument That This Court Manifestly Failed to**

7  **Consider Material Facts Is Without Merit.**

8  To prevail on a motion for reconsideration, Mireskandari must also

9  demonstrate "a manifest showing of a failure to consider material facts presented to

10  the Court before such decision."  Local Rule 7-18(c).  There is a high standard for

11  granting reconsideration on the basis of error; Mireskandari is required to

12  demonstrate a "wholesale disregard, misapplication, or failure to recognize

13  controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th

14  Cir.2000).  Local Rule 7-18 further provides that: "No motion for reconsideration

15  shall in any manner repeat any oral or written argument made in support of or in

16  opposition to the original motion."

17  Mireskandari has not made the requisite "manifest showing" that the Court

18  failed to consider material facts, but merely repeats the arguments already presented

19  in his papers.  For example, Mireskandari argues that this Court failed to consider

20  his expert declarations, which stated that English courts would consider evidence on

21  appeal (Mot. at 9), but as Respondent's opposition to Mireskandari's application

22  pointed out, the expert declaration states that there is a general rule against offering

23  new evidence in appellate proceedings in the UK, and exceptions to the rule are rare.

24

---

25  [2]  Mireskandari also cites the "last in time" doctrine and requests that this Court

26  vacate its own order on the sole grounds that he does not wish for this order, which
is unfavorable to him, to have *res judicata* effect.  Mot. at 6-7.  The "last in time"

27  doctrine is not an independent ground for vacating this Court's order where

28  Mireskandari has shown no basis for invalidating this Court's order.

1  Dkt. No. 11 at 10-11.  The record therefore does not support any showing that this

2  Court failed to consider Mireskandari's expert declarations, and the mere fact that

3  this Court disagreed with Mireskandari's argument does not mean that it failed to

4  consider material facts.

5      Mireskandari also contends that this Court should not have considered

6  Mireskandari's other pending proceedings, but the case law states that an applicant's

7  motive is a relevant factor in the court's exercise of discretion.  *Euromepa S.A. v. R.*

8  *Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (1995) ("if the district court determines that

9  a party's discovery application under section 1782 is made in bad faith, for the

10  purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the

11  court is free to deny the application in toto, just as it can if discovery was sought in

12  bad faith in domestic litigation.").  Mireskandari further argues that the Court had no

13  factual basis to find that Mireskandari is attempting to evade discovery obligations

14  or to forum shop by initiating various proceedings in the United States, but the only

15  support Mireskandari offers is that there are no pending state court proceedings,

16  though he concedes that he has initiated multiple federal proceedings where

17  discovery has been stayed.  Mot. at 10.  This is patently insufficient to make the

18  required manifest showing that this Court ignored material facts on the record.[3]

19  **IV.    CONCLUSION**

20      For the foregoing reasons, Respondent Solicitors Regulation Authority

21  respectfully urges the Court  to deny Applicant Shahrokh Mireskandari's Motion for

22  Reconsideration of Order Dated January 8, 2013.

23

24  [3]   Mireskandari also argues that reconsideration is appropriate here because Dr.

25  Scoma allegedly failed to produce documents in the Southern District proceeding
(Mot. at 10-11), but does not—and cannot—explain why a dispute over Dr. Scoma's

26  discovery obligations in another proceeding alone would impose discovery

27  obligations on Bird Marella.  This is not a basis for granting the extraordinary

28  remedy of reconsideration.

1 | DATED:  February 4, 2013

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Mark T. Drooks
Jessica S. Chen
BIRD, MARELLA, BOXER, WOLPERT,
   NESSIM, DROOKS & LINCENBERG, P.C.


By: _____/s/ Mark T. Drooks_____
         Mark T. Drooks
    Attorneys for Respondent Solicitors
    Regulation Authority

2921106.1

8

RESPONDENT SOLICITORS REGULATION AUTHORITY'S OPPOSITION TO APPLICANT'S MOTION FOR RECONSIDERATION OF ORDER DATED JANUARY 8, 2013

# DECLARATION

# DECLARATION OF MARK T. DROOKS

Mark T. Drooks declares as follows:

1.      I am an active member of the Bar of the State of California and a Principal with Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, A Professional Corporation, attorneys of record for Respondent Solicitors Regulation Authority in this action.  I make this declaration in support of Respondent Solicitors Regulation Authority's Opposition to Applicant's Motion for Reconsideration of Order Dated January 8, 2013. Except for those matters stated on information and belief, I make this declaration based upon personal knowledge and, if called upon to do so, I could and would so testify.

2.      Attached as **Exhibit A** is a true and correct copy of the Ex Parte Application of Shahrokh Mireskandari Pursuant to 28 U.S.C. § 1782 filed on December 3, 2012 in the Southern District of California, Case No. 12-cv-02865-IEG-DHB ("Scoma Application"). Attached as **Exhibit B** is a true and correct copy of the exhibits to the Scoma Application.

3.      Attached as **Exhibit C** is a true and correct copy of Judge Bartick's December 20, 2012 Order granting in part Applicant Shahrokh Mireskandari's Ex Parte Application Pursuant to 28 U.S.C. § 1782 in the Southern District of California, Case No. 12-cv-02865-IEG-DHB ("Scoma Ruling").


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I executed this declaration on February 4, 2013, at Los Angeles, California.


                                        /s/ Mark T. Drooks
                                        Mark T. Drooks

2922284.1                                        1

# EXHIBIT A

1   MARKS & SOKOLOV, LLC
    BRUCE S. MARKS (*Pro Hac Vice* pending)
2   1835 Market Street, 28th Floor
    Philadelphia, PA 19103
3   Telephone: (215) 569-8901
    Facsimile: (215) 569-8912
4   Marks@mslegal.com

5   BLECHER & COLLINS, P.C.
    MAXWELL M. BLECHER (SB# 026202)
6   515 South Figueroa Street, Suite 1750
    Los Angeles, California 90071-3334
7   Telephone: (213) 622-4222
    Facsimile: (213) 622-1656
8   mblecher@blechercollins.com

9   Attorneys for Applicant SHAHROKH
    MIRESKANDARI

10

11                 **UNITED STATES DISTRICT COURT**

12               **SOUTHERN DISTRICT OF CALIFORNIA**

13  *In re*                              CASE NO.  '12 CV 2865 IEG  DHB

14  Application of

15  SHAHROKH MIRESKANDARI,               **EX PARTE APPLICATION OF
                                         SHAHROKH MIRESKANDARI
16              Applicant.               PURSUANT TO 28 U.S.C. § 1782;
                                         MEMORANDUM OF POINTS AND
17  ------------------------------------ AUTHORITIES**

18  RE APPEAL IN THE:                    **(The Declaration of Bruce S. Marks
    HIGH COURT OF JUSTICE,               and Opinion of James Stuart and
19  QUEEN'S BENCH DIVISION               Proposed Order filed concurrently
    ADMINISTRATIVE COURT,                herewith)**
20  LONDON ENGLAND

21
    SHAHROKH MIRESKANDARI,
22
                Appellant,
23
    SOLICTORS REGULATION
24  AUTHORITY,

25              Respondent.

26

27

28

    EX PARTE APPLICATION OF SHAHROKH MIRESKANDARI PURSUANT TO 28 U.S.C. §
                   1782; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................1

FACTS ...........................................................................................................3

THE UNDERLYING ADMINISTRATIVE ACTION ....................................3

The April 19, 2012 Hearing and the SRA's Improper Initial Instructions ..............3

The SRA's Ex Parte Communications With Dr. Scoma ........................................4

The SDT Refused Applicant's Requested Adjournment of the May 28, 2012 Hearing ................................................................................................6

Dr. Scoma's *Ex Parte* Email Hoping His Report Was Beneficial Indicating He Felt He Was Acting for the SRA ............................................................................6

The SRA's Additional *Ex Parte* Communications With Dr. Scoma to Obtain Adverse Evidence Against Applicant ............................................................6

The SDT's Final Rulings on June 14, 2012 and June 21, 2012 ..........................7

Dr. Scoma's Further *Ex Parte* Email To The SRA Reflecting Bias .....................8

THE APPEAL ...............................................................................................8

THE SRA'S AMERICAN COUNSEL TURNS UP TO REPRESENT DR. SCOMA ....................................................................................................9

THE SRA'S IMMINENT THREAT TO HAVE APPLICANT'S APPEAL STAYED (EFFECTIVELY DISMISSED) ON THE BASIS OF AN ORDER FOR SECURITY FOR COSTS ....................................................................................9

AFTER ACQUIRED EVIDENCE IS ADMISSIBLE IN THE FOREIGN ACTION ...................................................................................10

THE REQUESTED DISCOVERY ................................................................11

THE SRA'S THREE SUCCESSFUL 28 U.S.C. § 1782 *EX PARTE* APPLICATIONS TO TAKE DISCOVERY ....................................................11

APPLICANT'S PENDING RICO ACTION ..................................................12

ARGUMENT ..............................................................................................12

I.   THE APPLICATION SHOULD BE GRANTED BECAUSE IT MEETS ALL REQUIREMENTS OF 28 U.S.C. § 1782 ...........................12

II.   THE APPLICATION SHOULD BE GRANTED BECAUSE IT SATISFIES ALL DISCRETIONARY FACTORS ..................................13

i

III.    THE APPLICATION MAY BE GRANTED *EX PARTE* ............................16

CONCLUSION ......................................................................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EX PARTE APPLICATION OF SHAHROKH MIRESKANDARI PURSUANT TO 28 U.S.C. §
1782; MEMORANDUM OF POINTS AND AUTHORITIES

1

**TABLE OF AUTHORITIES**

2
                                                                                              **Page(s)**
3

CASES
4

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
5    673 F.3d 76 (2d Cir. 2012) ................................................................. 15

6    *Euromepa S.A. v. R. Esmerian, Inc.,*
     51 F.3d 1095 (2d Cir. 1995) ............................................................... 14
7
     *In re Bayer AG,*
8    146 F.3d 188 (3d Cir. 1998) ................................................................ 14

9    *In re Ishihara Chem. Co., Ltd.,*
     251 F.3d 120 (2d Cir. 2001) ............................................................... 13
10
     *In re Letters Rogatory from the Tokyo Dist., Tokyo, Japan,*
11   539 F.2d 1216 (9th Cir. 1976) ............................................................ 16

12   *In re Marano,*
     2009 WL 48249 (N.D. Cal. Feb. 25, 2009) ..................................... 16
13
     *In re Request for Judicial Assistance from the Seoul Dist. Criminal
14   Court,*
     555 F.2d 720 (9th Cir. 1977) .............................................................. 15
15
     *In re The Procter & Gamble Co.,*
16   334 F. Supp.2d 1112 (E.D. Wis. 2004) ............................................ 15

17   *Intel Corp. v. Advanced Micro Devices, Inc.,*
     542 U.S. 241 (2004) ...................................................................... 13, 14

18

STATUTES

19

28 U.S.C. § 1782 ................................................................................... *passim*

28 U.S.C. § 1782(a) .............................................................. 12, 14, 15

20

21

22

23

24

25

26

27

28

iii

1      Shahrokh Mireskandari ("Applicant") respectfully applies for an order

2  authorizing discovery in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782.

3  This application is based on memorandum of points and authorities below; the

4  Declaration of Bruce S. Marks ("Marks Dec.") and Legal Opinion of James Stuart

5  (Stuart Opinion) filed concurrently herewith, including all exhibits thereto; the

6  proposed Subpoena attached as Exhibit 1; and the Proposed Order attached as

7  Exhibit 2.

8  **INTRODUCTION**

9      Applicant, a U.S. citizen residing in Los Angeles, California, seeks an order

10  pursuant to 28 U.S.C. § 1782 authorizing discovery in aid of a proceeding before the

11  High Court of Justice, Queens Bench Division, Administrative Court, in England

12  (the "Foreign Action") which consists of an appeal of a decision by the Solicitors

13  Disciplinary Tribunal ("SDT") which "struck him off" from the Roll to practice law

14  as a solicitor, i.e. disbarment.  The SDT's decision was made in *absentia* in an

15  administrative proceeding brought by the Solicitors Regulation Authority ("SRA")

16  after the SDT rejected Applicant's request for an adjournment based on his medical

17  condition, relying solely on written reports of Dr. Joseph Scoma, a resident of San

18  Diego, California, whom the SDT appointed as its purportedly independent expert,

19  but who never examined Applicant or testified.

20      Applicant seeks to serve a subpoena for documents and deposition testimony

21  on Dr. Scoma to establish, *inter alia,* he was not an independent expert, but was the

22  recipient of improper *ex parte* communications (known and unknown) by the SRA

23  and its agents (including Bird Marella, the SRA's American attorneys) which caused

24  him to believe he was the SRA's expert and prejudiced him against Applicant.  Even

25  though Applicant may appeal the SDT decision as of right, the SRA has threatened

26  to seek to have Applicant's appeal stayed (and effectively dismissed) unless

27  Applicant pays £302,755.20 ($485,346.86) into court to secure its costs on appeal.

28  This discovery is needed to establish the SRA's misconduct and its impact on Dr.

1

1  Scoma and in opposing the SRA's imminent motion as well as for the merits of his

2  appeal.

3      *First*, the Application satisfies § 1782's three statutory requirements:

4  (1) the Application is filed in the District where Dr. Scoma resides; (2) the discovery

5  is sought for use in a "proceeding in a foreign … tribunal"; and

6  (3) Applicant is an "interested person" as a litigant in the foreign proceeding.

7      *Second*, the Application also satisfies the factors which guide the Court's

8  discretion in deciding whether to permit discovery: (1) Dr. Scoma is not a participant

9  in the foreign proceeding (or subject to the English court's jurisdiction); (2) England

10 is receptive to receiving evidence from the United States; (3) the request is not made

11 to circumvent any limitation on discovery posed by a foreign court; and (4) the

12 discovery is not unduly burdensome, but in fact highly relevant to Applicant's

13 appeal to show that Dr. Scoma and the SRA breached the <u>absolute</u> duty under

14 English law to disclose <u>any</u> conflicts of interest.

15     *Third*, as the SRA argued in <u>three</u> successful *ex parte* § 1782 applications

16 related to Applicant filed in 2009, including one in the Central District of California,

17 § 1782 applications may properly be made on an *ex parte* basis.[1] Here, Applicant has

18 an exigent need to obtain the discovery to oppose the SRA's imminent motion to

19 stay his appeal on the basis of an order for security for costs.[2]

20     The Application should be granted.

21

22 ───────────────────

[1] The SRA's California application cited to *In re Letters Rogatory from the Tokyo*
23 *Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (finding grant of 28 U.S.C.
   § 1782 request on *ex parte* basis proper, and noting that witnesses can raise
24 objections by moving to quash the subpoenas) and *In re Marano*, No. CV-09-80020-
   MISC-DLJ, 2009 WL 48249, *2 (N.D. Cal. February 25, 2009) ("An *ex parte*
25 application is an acceptable method for discovery pursuant to § 1782").

26 [2] In an abundance of caution, this Application was served by email on the SRA's
27 solicitors in the Foreign Action, Russell-Cooke, LLP, and its American attorneys,
   Bird Marella. *See* Declaration of Bruce S. Marks ("Marks Dec.") ¶ 27, Ex. V.
28
                                          2

# FACTS[3]

## THE UNDERLYING ADMINISTRATIVE ACTION

The Foreign Action concerns an appeal to the High Court of Justice, Queens Bench Division, Administrative Court in England, acting in its appellate capacity, of a decision initially made orally dated June 21, 2012 (and later promulgated in a written judgment in September 2012) (the "Decision") of the Solicitors Disciplinary Tribunal ("SDT") "striking off" Applicant from the Roll to practice law as a solicitor (disbarment).  The underlying action was brought in 2009 by the Law Society of England and Wales ("LSE") acting through the Solicitors Regulation Authority (the "SRA"), its regulatory arm.  The SRA brought the proceedings against Applicant and two other solicitors.  The Applicant was designated as the "First Respondent."  The hearings commenced in April 2011, but were adjourned in December 2011 based upon Applicant's medical condition.

## The April 19, 2012 Hearing and the SRA's Improper Initial Instructions

On April 19, 2012, the SDT issued an order appointing Dr. Scoma as its independent expert.  Marks Dec., ¶ 6 & Ex. A (Skel. Arg.).  The SRA, through its solicitor Andrew Pavlovic of Russell-Cooke, LLP, sent him a letter of instruction by email on April 20, 2012.  Marks Dec., ¶¶ 6,8 & Exs. A (Skel. Arg.) & B (Apr. 20, 2012 Letter, #486).  The Applicant was copied; however, as the SRA well knew, he was seriously ill and was unable to review it.  This letter revealed the beginning of an improper *ex parte* campaign to cause Dr. Scoma to believe he was the SRA's expert and prejudice him against Applicant.

*First*, the SRA's letter reflects an improper attempt to prejudice Dr. Scoma.  It

---

[3] The facts are based on documents of record in the SDT and High Court proceedings in England attached to the Declaration of Bruce S. Marks, Applicant's counsel.  The Marks Declaration includes the "Skeleton Argument" from the appeal, akin to a brief.  It also includes documents of record in court proceedings in the United States.

3

1   referred to "alleged breaches" involving "honesty, probity, trustworthiness
2   independence and integrity" of Applicant.  Marks Dec. Ex. B (Apr. 20, 2012 Letter,
3   #487).  It was irrelevant for Dr. Scoma to know the nature of the SDT proceedings;
4   he was a medical expert.  This was done to impune Applicant's credibility.
5      *Second*, the SRA's letter included instructions that Dr. Scoma "let us [the
6   SRA] see a copy of your answers before finalising them" in regard to any questions
7   submitted by Applicant and "[i]f you inform us that you do have an actual or
8   potential conflict of interest, we may decide that we do not consider that it affects
9   your independence as an expert and we do not need to withdraw your instructions."
10  *Id.* Ex. B (April 20, 2012 Letter, Schedule, #491).  The SRA had no right to preview
11  Dr. Scoma's answers or decide whether he was conflicted; this created the false
12  impression for Dr. Scoma that he was the SRA's expert.
13     *Third*, the letter included instructions that stated: "Please direct any
14  communications on this matter to this firm and mark any correspondence or other
15  documents as confidential and privileged and prepared at the request of Russell-
16  Cooke LLP for the purpose of litigation."  *Id.*  This again created the false
17  impression that Dr. Scoma was to act on behalf of the SRA—Dr. Scoma's
18  communications were <u>not</u> "confidential and privileged and prepared at the request"
19  of the SRA.
20              **The SRA's *Ex Parte* Communications With Dr. Scoma**
21     Between April 20 and May 23, 2012, there were numerous *ex parte* email
22  communications between the SRA and Dr. Scoma to take advantage of the false
23  impressions created above.  These *ex parte* emails reveal that at an early stage Dr.
24  Scoma decided he did not need to carry out a physical examination of Applicant.
25  The SRA did not provide these emails to Applicant's counsel until late May 2012.
26  Marks Dec., ¶ 6, 8-13 & Exs. A (Skel. Arg.) & C-H (SRA-Scoma *ex parte* emails).
27  These communications included:
28

4

Case 2:12-cv-10310-DSF-E    Document 26    Filed 02/04/13    Page 21 of 57    Page ID
#:678
Case 3:12-cv-02865-IEG-DHB    Document 1    Filed 12/03/12    Page 9 of 20

- Dr. Scoma's email to the SRA stating: "i believe i can assist you in this matter as an expert general and colorectal surgeon. i expect that all the medical records will be forwarded to me for a thorough review. at this point i do not intend to examine the patient. ... also i should have a clear understanding as to whom i am responding." Marks Dec. Ex. C, Dr. Scoma April 25, 2012, 10:11, email. However, Dr. Scoma was not to "assist you [the SRA]" but to serve as an independent expert for the SDT proceeding.

- The SRA's email to Dr. Scoma stating "Thank you for your e-mail. In terms of further communications please address these to me ..." Marks Dec. Ex. D (SRA April 26, 2012, 10:21 email). However, any communications from Dr. Scoma should have been addressed to both Applicant and the SRA.

- Dr. Scoma's email to the SRA stating: "i have received late last evening a comprehensive medical package from dr farzam ... i have no intention to perform an actual physical exam. i hope that this will be satisfactory and i may move towards closure" Marks Dec. Ex. E (Dr. Scoma May 23, 2012, 16:54 email). However, it was not up to the SRA to decide this was "satisfactory." This should have been immediately disclosed to Applicant and the SDT.

- After receiving Dr. Scoma's initial report in a May 23, 2012 *ex parte* email, the SRA requested in a May 24, 2012 *ex parte* email that Dr. Scoma to make a specific revision, which he did, and forwarded to the SRA in an *ex parte* email that same day "edited and revised." Marks Dec. Ex. F (Dr. Scoma May 23, 2012, 18:41 email); Ex. G (SRA May 24, 2012, 11:52 email); & Ex. H (Dr. Scoma May 24, 2012, 17:34 email). However, only the SDT was entitled to request revision, not the SRA.

EX PARTE APPLICATION OF SHAHROKH MIRESKANDARI PURSUANT TO 28 U.S.C. § 1782; MEMORANDUM OF POINTS AND AUTHORITIES

**The SDT Refused Applicant's Requested Adjournment**

**of the May 28, 2012 Hearing**

Applicant submitted medical evidence to the SDT regarding his medical condition in the form of reports of Dr. Amiri dated May 24, 2012; Dr. Jeremy Fine dated May 25, 2012; Dr. Farzam dated May 27, 2012; and Dr. Sokol dated May 28, 2012.  The evidence detailed *inter alia*, Applicant was suffering post-operative pain, chronic rectal pain, excessive bleeding with bowel movements, assessed to be bi-polar and severely depressed, and that he should not travel.  Marks Dec. Ex. A (Skel. Arg. ¶¶ 12, 16-22).  Based on Dr. Scoma's report, on May 29, 2012, the SDT refused Applicant's application for an adjournment.  The hearings then proceeded in *absentia*. *Id.* Ex. A (Skel. Arg. ¶¶ 13, 14).

**Dr. Scoma's *Ex Parte* Email Hoping His Report Was Beneficial**

**Indicating He Felt He Was Acting for the SRA**

On June 8, 2012, Dr. Scoma sent an *ex parte* email to the SRA stating "I assume that the matter that i assisted you with has been completed successfully.  I hope that my report was beneficial." *Id.* Ex. I (Dr. Scoma email).  This email was not disclosed until July 11, 2012, after the SDT "struck off" Applicant on June 21, 2012. *Id.* Ex. A (Skel. Arg. ¶ 61).

**The SRA's Additional *Ex Parte* Communications With Dr. Scoma**

**to Obtain Adverse Evidence Against Applicant**

On June 9, 2012, Applicant submitted further medical evidence of his treating physician Dr. Sokol clarifying his prior medical notes, making clear that Applicant could not travel to England as well as reports from Dr. Wise dated June 12, 2012 and Dr. Nowain dated June 11, 2012.  These medical reports detailed Applicant's severe medical condition including an operation on May 31, 2012; post-operative pain; excessive bleeding with bowel movements; Bi-Polar II Disorder with Generalized Anxiety Disorder; severe pain and fatigue; his being on strong medications; and an investigative camera becoming lodged inside him during a

6

1  procedure on June 12, 2012. *Id.* Ex. A (Skel. Arg. ¶¶ 16-22, 24).

2      The SRA responded with additional *ex parte* communications with Dr. Scoma

3  to obtain evidence to counter Applicant's medical submissions. Marks Dec. Ex. J

4  (SRA June 11, 2012 email); Ex. K (Dr. Scoma June 12, 2012, 1:06 email); Ex. L

5  (SRA June 12, 2012, 13:27 email). On June 12, 2012, 23:27, Dr. Scoma submitted

6  an addendum to his May 23, 2012 report, stating his "opinion and report remain the

7  same." *Id.* Ex. L (Dr. Scoma Addendum and email).

8      **The SDT's Final Rulings on June 14, 2012 and June 21, 2012**

9      On June 13, 2012, the SDT heard Applicant's application for adjournment on

10  renewed medical grounds, but rejected the application on June 14, 2012. *Id.* Ex. A

11  (Skel. Arg. ¶ 23). On June 14, 2012, the following exchange took place between the

12  SDT and Mr. Beaumont, Applicant's then barrister (attorney), which confirmed the

13  SDT was relying solely on Dr. Scoma:

14      MR. BEAUMONT: The second point is that you have relied again on

15      the evidence of Dr Scoma but you have not said anything about the

16      point that was drawn to your attention yesterday, namely that Dr

17      Scoma stated his opinion would be the same even before reading any

18      material. Do you make no finding about that?

19      THE CHAIR:    That is because we have decided that he is our

20      independent expert and we preferred his evidence. We could actually

21      have gone through all the medical reports that we received yesterday

22      and commented on them. We have chosen not to deal with that detail.

23      Our overall view is that we accept his position.    He has been

24      consistent.

25  *Id.* Ex. N (June 14, 2012 Hearing Transcript Excerpt, p. 6).

26      The hearing was then conducted in *absentia* through June 21, 2012 when the

27  charges against Applicant were found "proved in his absence and without hearing

28  him in his own defence" and he was struck off the roll. *Id.* Ex. A (Skel. Arg. ¶ 23).

**Dr. Scoma's Further *Ex Parte* Email To The SRA Reflecting Bias**

On June 21, 2012 at 23:25, Dr. Scoma emailed the SRA stating "I hope that all went well for you and your firm." *Id.* Ex. O (Dr. Scoma email). This was not disclosed until July 11, 2012. *Id.* Ex. A (Skel. Arg. ¶ 61). Needless to say, Dr. Scoma should have had no position on whether "all went well" for the SRA's solicitor and his firm.

## THE APPEAL

On September 7, 2012, Applicant appealed to the High Court in which he is the "Appellant" and the SRA is the "Respondent." He asserted, *inter alia*, that the SDT erred in rejecting the applications for adjournment relying upon the reports of Dr. Scoma, which were improperly influenced by numerous *ex parte* communications by the SRA and its agents, resulting in bias by Dr. Scoma against Applicant.

Applicant's Skeleton Argument states:

… the SDT plainly failed to deal with the discreditable behavior of its expert and simply circumvented it. The SDT blindly accepted the evidence of Dr. Scoma on the jejune footing the he was their independent expert, wheras he had been discredited by: (a) outlandish prejudgment and (b) failure to examine [Applicant].

*Id.* Ex. A (Skel. Arg. ¶ 48).

It also states:

On or about 11ᵗʰ July 2012 and only after a request of [Applicant]'s solicitors for any e-mails concerning the fees charged by Dr. Scoma for his second "report," such emails were eventually disclosed by Russell-Cooke for the SRA. They had hitherto not been volunteered, despite past complaints of such non-disclosure on the part of the SRA's solicitors (who had been conducting secret correspondence with Dr. Scoma that was the subject of pejorative submissions by the

8

[SRA] at the hearings of 28th/29th May 2012).    It is perhaps not surprising that the SRA was coy about voluntarily disclosing these emails: they reveal a grossly irregular remark by Dr. Scoma by e-mail of 21st June 2012 (the final day of the trial when judgment had been given- the email was timed at 23.25 hours, so it would have been the morning of 22nd June 2012 in England): *"I hope that all went well for you and your firm"*

*Id.* Ex. A (Skel. Arg. ¶ 61).

## THE SRA'S AMERICAN COUNSEL TURNS UP
## TO REPRESENT DR. SCOMA

Bird Marella has represented the SRA since at least May 7, 2009 when it filed an *Ex Parte* Application on behalf of the SRA for discovery pursuant to 28 U.S.C. § 1782 related to Applicant.  Even before the SDT issued its final written decision in September 2012, Bird Marella turned up to represent Dr. Scoma on July 16, 2012 when it served objections to a subpoena served on Dr. Scoma in a proceeding pending in the California Superior Court captioned *Paul Baxendale-Walker v. Barrington Mayne et. al.*, Case No. BC467070, seeking documents, *inter alia*, related to Applicant.  The subpoena was served on Dr. Scoma on July 12, 2012. *Id.* Ex. Q (Subpoena); Ex. R (Objection).

## THE SRA'S IMMINENT THREAT TO HAVE
## APPLICANT'S APPEAL STAYED (EFFECTIVELY DISMISSED)
## ON THE BASIS OF AN ORDER FOR SECURITY FOR COSTS

In England, courts may require a party to provide security for costs before litigation may proceed.  Perhaps recognizing the strength of Applicant's appeal, the SRA sent a letter dated November 13, 2012 by which it threatened to seek to have the appeal stayed unless Applicant pays £302,755.20 ($485,346.86) to secure its costs on appeal. *Id.* Ex. P (SRA Letter).  One reason that the SRA alleges for this draconian sanction is that Applicant has been declared bankrupt in England (which

9

1    logically means he cannot afford to pay security).  If the security is not provided, the

2    appeal will be dismissed as discussed below.

### AFTER ACQUIRED EVIDENCE IS ADMISSIBLE
### IN THE FOREIGN ACTION

5        Under English law, evidence acquired after the SDT decision which is the

6    subject of the Foreign Action may be adduced and submitted to the High Court in

7    the appeal and also to oppose the imminent proceedings for security, as set forth in

8    the legal expert opinion of James Stuart, an English barrister representing Applicant

9    in his appeal in England.  According to Mr. Stuart:

10       a.    English Courts follow the rule that where fresh evidence comes to light

11             after a judgment has been reached which puts that judgment in doubt,

12             the unsuccessful party **may** be permitted to invoke that fresh evidence

13             in order to challenge the judgment by appeal to an appellate court.  *See*

14             Stuart Opinion, ¶¶ 6(a), 14-36.

15       b.    English courts permit evidence (including such fresh evidence) to be

16             used when opposing an application for security for costs to the

17             appellate court.  *See id.* ¶¶ 6(b), 37-45.

18       c.    English courts impose a strict duty of disclosure on experts and those

19             involved in their instructions of any potential conflicts of interest, and

20             such disclosure of an expert's potential conflicts of interest should be

21             made at an early stage in proceedings.  *See id.* ¶¶ 6(c), 46-50.

22       Mr. Stuart also explained that if security is ordered, the appeal will be

23    dismissed if the security is not provided.  *Id.* ¶ 37 n.2.  In regard to the duty of

24    disclosure, Mr. Stuart quoted *Toth v. Jarman* (2006), an English Court of Appeal

25    decision, which stated:

26       If there was a conflict of interest which was not obviously immaterial,

27       it should have been disclosed by [the expert] to the Defendant's

28       solicitors and by them to the Appellant's solicitor … In such a

10

situation, the expert should disclose such information to enable the court and the other party properly to assess the conflict of interest.… The obligation to disclose the existence of a conflict of interest in our judgment stems from the overriding duty of an expert [to provide independent opinions]… and also from the duty of the parties to help the court further the overriding objective of dealing with cases justly … The Court needs to be assisted by information as to any potential conflict of interest so that it can decide for itself whether it should act in reliance on the evidence of that expert.

## THE REQUESTED DISCOVERY

Applicant seeks to issue the subpoena attached hereto as Exhibit 1 on Dr. Scoma for production of documents seeking (1) all documents and communications related to the SRA and Applicant; and (2) all communications with Bird Marella before July 12, 2012 (the date on which the subpoena was served on Dr. Scoma), and (3) his insurance policy applicable in 2012,[4] and his deposition to explore, *inter alia*, the *ex parte* communications with the SRA (including his own emails); his relationship with Bird Marella (and whether the SRA secretly promised that it would provide legal counsel to him while he was the SDT's independent expert); and his understanding of his duties as an independent expert.  Applicant also seeks permission to take reasonable follow-up discovery once responses to the subpoena are received.

## THE SRA'S THREE SUCCESSFUL 28 U.S.C. § 1782
## *EX PARTE* APPLICATIONS TO TAKE DISCOVERY

In its pursuit of Applicant, the SRA filed *ex parte* applications pursuant to 28

---

[4] Dr. Scoma appears to be a non-practicing physician.  The reason which he refused to examine Applicant may be that he had no insurance.  If so, this was concealed from Applicant and the SDT, and may have been known by the SRA and Bird Marella, which recommended Dr. Scoma.

11

1  U.S.C. § 1782 in California, the District of Columbia, and Virginia in 2009. Copies
2  of the Petitions, without exhibits, and the resulting orders granting the applications
3  are attached to the Marks Declaration. *See* Marks Dec. Exs. S, T & U. In
4  California, the order was issued five days after the application was filed.

### APPLICANT'S PENDING RICO ACTION

6       In order to ensure that the Court has all potentially relevant information,
7  Applicant discloses that he has filed an action in the federal district court for the
8  Central District of California pending before Judge Morrow against the SRA and
9  various other defendants, including persons associated with the SRA. *Mireskandari*
10 *et al v. Mayne* et al., Case No. CV 12-03861 MMM-FMOx.

### ARGUMENT[5]

**I.    THE APPLICATION SHOULD BE GRANTED BECAUSE IT MEETS ALL REQUIREMENTS OF 28 U.S.C. § 1782**

14      28 U.S.C. § 1782(a) provides, in relevant part:

   The district court of the district in which a person resides or is found
   may order him to give his testimony or statement or to produce a
   document or other thing for use in a proceeding in a foreign or
   international tribunal, including criminal investigations conducted
   before formal accusation. The order may be made ... upon the
   application of any interested person and may direct that the testimony
   or statement be given, or the document or other thing be produced,
   before a person appointed by the court.

23      An applicant seeking discovery under § 1782 need only demonstrate that (1)
24 the party from whom discovery is sought resides (or is found) in the district, (2) that
25 the discovery is for use in a proceeding before a foreign tribunal, and (3) that the

---

[5] Applicant's descriptions of the requirements of § 1782 and discretionary factors are taken almost verbatim from the application filed by the SRA in California in 2009.

EX PARTE APPLICATION OF SHAHROKH MIRESKANDARI PURSUANT TO 28 U.S.C. § 1782; MEMORANDUM OF POINTS AND AUTHORITIES

1  applicant is an "interested person" before such foreign tribunal. *In re Ishihara*

2  *Chem. Co., Ltd.,* 251 F.3d 120, 124 (2d Cir. 2001). The Application, which seeks

3  critical evidence that Dr. Scoma concealed his conflicts of interests and *ex parte*

4  communications with the SRA and its American attorneys, Bird Marella—despite an

5  absolute duty to disclose such under English law, particularly given his status as the

6  SDT's independent expert—satisfies all of these requirements.

7       *First,* Dr. Scoma resides in this District.

8       *Second,* the discovery is for use in the Foreign Action. *See Intel Corp.* v.

9  *Advanced Micro Devices, Inc.,* 542 U.S. 241, 257-58 (2004) ("foreign or

10  international tribunal" includes conventional civil, commercial, criminal, and

11  administrative courts). The cornerstone of Applicant's appeal is whether the SRA

12  improperly influenced Dr. Scoma as the SDT's independent expert and whether Dr.

13  Scoma understood his role as an independent expert, not the SRA's expert.

14  Discovery regarding improper *ex parte* communications between the SRA and Dr.

15  Scoma, including communications with the SRA's American counsel, Bird Marella,

16  and his understanding of his instructions go directly to these issues.[6]

17       *Third,* Applicant is clearly an "interested person" within the meaning of §

18  1782. *See Intel,* 542 U.S. at 256 ("No doubt litigants are included among, and may

19  be the most common example of the 'interested persons' who may invoke § 1782").

20  **II.    THE APPLICATION SHOULD BE GRANTED BECAUSE**

21  **IT SATISFIES ALL DISCRETIONARY FACTORS**

22       "The twin aims of [§ 1782] are to provide 'efficient means of assistance to

23  participants in international litigation in our federal court' and to encourage 'foreign

24  countries by example to provide similar means of assistance to our courts.'" *See In*

25  *re Ishihara,* 251 F.3d at 124. *Intel* set forth the following factors to be weighed by

---

26  [6] As *Intel* held, the proceedings need only be "within reasonable contemplation." *Id.*
27  at 258. The appeal is pending, satisfying § 1782 by itself, and the SRA's imminent threat to seek security certainly makes the need to oppose such "within reasonable
28  contemplation."

13

1   district courts in considering whether to grant discovery for use in a foreign legal
2   proceeding: (1) whether the person from whom discovery is sought is a participant
3   in the foreign case, (2) the nature and character of the foreign proceeding, and
4   whether the foreign court is receptive to judicial assistance from the United States;
5   (3) whether the discovery request is an attempt to avoid foreign evidence-gathering
6   restrictions; and (4) whether the discovery request is unduly intrusive or
7   burdensome. *See Intel,* 542 U.S. at 264-66. All factors weigh in favor of granting
8   the Application.

9        *First,* Dr. Scoma is not a party to the Foreign Action. As *Intel* explained,
10  "nonparticipants in the foreign proceeding may be outside the foreign tribunal's
11  jurisdictional reach; hence, their evidence, available in the United States, may be
12  unobtainable absent § 1782(a) aid." *See id.* at 264. The English courts have no
13  authority to order Dr. Scoma to produce the discovery that Applicant seeks. This
14  factor weighs strongly in Applicant's favor.

15       *Second,* as the SRA noted in its § 1782 applications, English courts
16  historically have been receptive to judicial assistance from the United States. *See In
17  re Bayer AG,* 146 F.3d 188, 194-95 (3d Cir. 1998) (describing an English case in
18  which the House of Lords held that the parties to an English litigation were entitled
19  to prepare their case by obtaining documents in a foreign country, and that this
20  included the right to seek discovery under § 1782). Indeed, Applicant expects to
21  introduce the evidence at issue into the Foreign Action. Thus, this factor weighs
22  strongly in Applicant's favor.

23       *Third,* the discovery request is not an attempt to avoid evidence-gathering
24  restrictions in England. The proposed subpoena constitutes a legitimate method of
25  obtaining evidence in Dr. Scoma's possession which is therefore unavailable in
26  England. Moreover, as the SRA noted in its own § 1782 applications, a litigant in
27  England is not required to seek "information through the foreign or international
28  tribunal before requesting discovery from the district court." *Euromepa S.A. v. R.*

14

1   *Esmerian, Inc.,* 51 F.3d 1095, 1098 (2d Cir. 1995) (rejecting "any implicit

2   requirement that any evidence sought in the United States be discoverable under the

3   laws of the foreign country").[7]  Thus, based on the SRA's own argument, this factor

4   weighs strong in Applicant's favor.

5          *Fourth,* Applicant's proposed subpoena is not unduly intrusive or burdensome.

6   On the contrary, the requested discovery is narrowly tailored to seek evidence and

7   testimony relating to Dr. Scoma's communication with the SRA and its agents,

8   including Bird Marella, his understanding of his instructions, and his performance of

9   his duties, including his unexplained refusal to examine Applicant.  In any case,

10  because Dr. Scoma is free to serve objections, this factor need not be decided at this

11  time.

12         *Finally,* § 1782 does not require the applicant to establish that the sought

13  evidence is admissible in the foreign action.  *Brandi-Dohrn v. IKB Deutsche*

14  *Industriebank AG,* 673 F.3d 76, 82 (2d Cir. 2012) (just "as a district court should not

15  consider the *discoverability* of the evidence in the foreign proceeding, it should not

16  consider the *admissibility* of evidence in the foreign proceeding in ruling on a

17  *section 1782* application")**;** *In re Request for Judicial Assistance from the Seoul*

18  *Dist. Criminal Court,* 555 F.2d 720, 723 (9th Cir. 1977) ("[F]ederal courts, in

19  responding to [§ 1782] requests, should not feel obliged to involve themselves in

20  technical questions of foreign law relating to . . . the admissibility before such

21  tribunals of the testimony or material sought.").  Nonetheless, Applicant has gone

22  the extra mile by submitting Mr. Stuart's opinion that English courts will accept new

23  evidence on appeal and will consider this evidence in opposing the SRA's imminent

24  petition for security.  Stuart Opinion, ¶¶6, 14-36.

25

26  [7] *See In re The Procter & Gamble Co.,* 334 F. Supp.2d 1112, 1116 (E.D. Wis. 2004)
    (holding that "to decline a § 1782(a) request based on foreign nondiscoverability, a
27  district court must conclude that the request would undermine a specific policy of a
28  foreign country or the United States").

                                         15

III.     **THE APPLICATION MAY BE GRANTED** *EX PARTE*

As the SRA argued in its <u>three</u> successful § 1782 applications, requests made pursuant to 28 U.S.C. § 1782 may properly be made and granted on an *ex parte* basis. The SRA's California application cited *In re Letters Rogatory from the Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (finding grant of 28 U.S.C. § 1782 request on *ex parte* basis proper, and noting that witnesses can raise objections by moving to quash the subpoenas) and *In re Marano*, No. CV-09-80020-MISC-DLJ, 2009 WL 48249, *2 (N.D. Cal. Feb. 25, 2009) ("An *ex parte* application is an acceptable method for discovery pursuant to § 1782"). *Ex parte* relief is necessary because Applicant may be required to submit evidence in the Foreign Action imminently when the SRA moves for security and otherwise to stay (effectively dismiss) his appeal. However, as noted above, to avoid any criticism, Applicant has served the SRA, Russell-Cooke, LLP, and Bird Marella with this filing.

**CONCLUSION**

Because the Application meets all the requirements set forth in 28 U.S.C. § 1782, and because each of the four *Intel* factors weighs heavily in favor of granting the requested discovery, Applicant respectfully urges the Court to grant his request for an order authorizing his counsel to serve the subpoena in the form attached hereto on Dr. Scoma and to conduct any follow-up discovery relevant to the subpoena which may be required.

Dated: December 3, 2012          Respectfully Submitted,


                                 /s/ Maxwell M. Blecher
                                 Maxwell M. Blecher (SB# 026202)
                                 BLECHER & COLLINS, P.C.


                                 /s/ Bruce S. Marks
                                 Bruce S. Marks (*pro hac vice* pending)
                                 MARKS & SOKOLOV, LLC

# EXHIBIT B

# TABLE OF CONTENTS

## <u>EXHIBITS TO EX PARTE APPLICATION</u>

**Page**

Exhibit 1 ................................................................................... 17

Exhibit 2 ................................................................................... 28

Case 2:12-cv-10310-DSF-E    Document 26    Filed 02/04/13    Page 35 of 57    Page ID
#:692
Case 3:12-cv-02865-IEG-DHB    Document 1-1    Filed 12/03/12    Page 2 of 15

# EXHIBIT 1

Case 3:12-cv-02865-IEG-DHB    Document 1-1    Filed 12/03/12    Page 3 of 15

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

SOUTHERN    District of CALIFORNIA

In re Application of SHAHROKH MIRESKANDARI                )
                                                          )
_____                )
                    *Plaintiff*                           )
                       v.                                 )    Civil Action No. _____
SOLICITORS REGULATION AUTHORITY                           )
                                                          )    (If the action is pending in another district, state where:
_____                )    High Court of Justice, Queen's Bench, London England    )
                    *Defendant*                           )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Joseph A. Scoma
     4060 Fourth Avenue, Suite 510
     San Diego, CA  92103

     [X] *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Veritext                                            | Date and Time: |
| 402 West Broadway, Suite 700, San Diego, CA  92101         |                |

          The deposition will be recorded by this method:  _stenographically and may also be videotaped_

     [X] *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:        **See Attachment A**

          The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _Dec. 3, 2012_

          CLERK OF COURT

                                                                OR    _____
          _____                           *Attorney's signature*
              *Signature of Clerk or Deputy Clerk*                     Maxwell M. Blecher

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _Shahrokh Mireskandari_ _____ , who issues or requests this subpoena, are:

Maxwell M. Blecher, Blecher & Collins, P.C., 515 S. Figueroa St., Suite 1750, Los Angeles, California 90071; mblecher @blechercollins.com; Telephone: (213) 622-4222; Facsimile: (213) 622-1656

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____.

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                        *Server's signature*

                              _____
                                        *Printed name and title*

                              _____
                                        *Server's address*

Additional information regarding attempted service, etc:

19

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

20

## ATTACHMENT A

## REQUESTS FOR PRODUCTION

**1. REQUEST FOR PRODUCTION:**

All communications you had with the LSE/SRA.


**2. REQUEST FOR PRODUCTION:**

All communications you had with the law firm of Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, P.C.


**3. REQUEST FOR PRODUCTION:**

All documents that refer or relate to Shahrokh Mireskandari.


## DEFINITIONS

1.    Unless otherwise specified, the relevant time period for these requests spans from January 1, 2000 through the present.

2.    The terms "LSE" shall mean the Law Society of England and Wales and any predecessors, successors, parents, partially or wholly owned subsidiaries, affiliates, divisions, departments, operating units, and any other subdivisions; their present and former officers, directors, agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions; and all officers, directors, employees, agents, servants and/or other persons either acting or purporting to act on behalf of the above, or any of them, including, but not limited to, its solicitor Andrew Pavlovic.

3.    The terms "SRA" shall mean the Solicitors Regulation Authority and any predecessors, successors, parents, partially or wholly owned subsidiaries, affiliates, divisions, departments, operating units, and any other subdivisions; their present and former officers, directors, agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar

- 1 -

21

1    functions; and all officers, directors, employees, agents, servants and/or other

2    persons either acting or purporting to act on behalf of the above, or any of them,

3    including, but not limited to, its solicitor Andrew Pavlovic.

4         4.    The term the "Crown" shall mean collectively the British Monarchy,

5    Her Majesty's Government of the United Kingdom of Great Britain and Northern

6    Ireland and Her Majesty's Courts & Tribunals Service.

7         5.    The terms "you" and "your" shall mean Joseph A. Scoma.

8         6.    "Refer" or "relate" or "referring" or "relating" or "regarding" means

9    all documents which comprise, explicitly or implicitly refer to, were reviewed in

10    conjunction with or were created, generated or maintained as a result of the subject

11    matter of the request, including, without limitation, all documents which reflect,

12    record, memorialize, embody, discuss, evaluate, consider, review or report on the

13    subject matter of the request.

14        7.    "Document(s)" shall be interpreted in the broadest possible sense and

15    includes all written, computer-generated or stored or maintained information or

16    data, whether recorded, printed, typed, transcribed, filmed, digitized,

17    electromagnetic or graphic matter, and all other tangible things and media upon

18    which any handwriting, typing, printing, drawing, representation, electrostatic or

19    other copy, sound or video recording, magnetic or electrical impulse, visual

20    reproduction or communication is recorded, reproduced or represented.

21        Without limiting the generality of the foregoing, the term "document" or

22    "documents" includes, but is not limited to books, papers, records, correspondence,

23    reports, memoranda, computer generated or stored or maintained information or

24    data (including, but not limited to, electronic mail (i.e., "e-mail"), articles,

25    newspapers, contracts, tables, tabulations, graphs, charts, diagrams, plans,

26    schedules, appointment books, calendars, diaries, time sheets, reports, studies,

27    analyses, drafts, telegrams, teletype of telecopy messages, files, telephone logs and

28    messages, checks, microfilms, microfiche, pictures, photographs, printouts,

- 2 -

1    electronic data compilations, tapes, diskettes, drives, removable media, notes,

2    minutes or transcripts of proceedings and every means of recording upon any

3    tangible thing any form of communication or representation, including letters,

4    words, pictures, sounds or symbols, or any combinations thereof.

5         Documents shall include originals and all non-identical copies (whether

6    different from the original because of notes made in or attached to such copy, or

7    otherwise), all other data compilations from which information can be obtained

8    (translated, if necessary into usable form) and any preliminary versions, drafts or

9    revisions of any of the foregoing.  If a document was prepared in several copies or

10   if additional copies were thereafter made, and if any such copies were not identical

11   or are no longer identical by reason of notation or modification of any kind

12   whatsoever including, without limitation, notations on the front or back of any

13   pages thereof, then each such copy must be produced.

14        As noted, the terms "documents" or "records" include, among other

15   information, information stored in machine-readable form.  In determining where

16   responsive documents in this form might be located, consider whether you have any

17   equipment or media that contain "documents" as defined herein, including but not

18   limited to:

19            (1)    Desktop personal computers (PCs) or workstations; PCs,

20   workstations, minicomputers, or mainframes; laptop, notebook, and other portable

21   computers, whether assigned to individuals or in pools available for shared use; and

22   home computers used for work-related purposes.

23            (2)    Backup disks and tapes, archival disks and tapes, and other

24   forms of offline storage, whether stored on-site with the computers used to generate

25   them or off-site in another computer facility or by a third party; and

26            (3)    Electronic mail messages, even if available only on backup or

27   archive disks or tapes.

28        8.    The term "or" shall be construed as disjunctive and conjunctive, and

- 3 -

23

1    "any" and "all" as used herein shall include "each" and "every."

2        9.    "Person" or "persons" means any natural person or any business, legal

3    or governmental entity or association.

4        10.    The use of the singular form of any word includes the plural and vice

5    versa; and the use of the masculine gender shall include the feminine and neuter

6    genders.

7        11.    All responsive electronically stored information ("ESI") should be

8    produced in native format.  Native files should be linked to TIFF images produced

9    in single-page Group IV File format and accompanied by a Concordance Image

10    load file (or other generally acceptable load file format).  Metadata should be

11    produced in a Concordance DAT file format or other mutually acceptable format.

12    The DAT file or other mutually acceptable format shall include at a minimum the

13    following metadata fields: custodian name, filename or subject line, original file

14    path or inbox folder path, To, From, CC, BCC, text, create date, modify date, sent

15    date, beginning and ending Bates numbers, page count and attachment range.

16    Electronic spreadsheets, such as Excel files, should be produced in native format

17    without the need for TIFF images.  All other responsive DOCUMENTS should be

18    produced as TIFF image files in an electronic format.

19                                **INSTRUCTIONS**

20        1.    In producing documents and other materials, you are requested to

21    furnish all documents or things in your possession, custody or control, regardless of

22    whether such documents or materials are possessed directly by you or your

23    directors, officers, partners, members, agents, employees, representatives,

24    subsidiaries, managing agents, affiliates, investigators, or by your attorneys or their

25    agents, employees, representatives or investigators.

26        2.    If any requested document is not or cannot be produced in full,

27    produce it to the extent possible, indicating which document, or portion of that

28    document, is being withheld, and the reason that document, or portion of that

- 4 -

24

1    document, is being withheld.

2        3.        In producing documents, you are requested to produce each document

3    requested together with all non-identical copies and drafts of that document.  If the

4    original of any document cannot be located, a copy shall be provided in lieu

5    thereof, and shall be legible and bound or stapled in the same manner as the

6    original.

7        4.        Documents shall be produced as they are kept in the usual course of

8    business or organized and labeled to correspond to the categories in this Request.

9        5.        All documents shall be produced in the file folder, envelope or other

10    container in which the documents are kept or maintained by you.  If, for any reason,

11    the container cannot be produced, produce copies of all labels or other identifying

12    marks.

13        6.        Documents attached to each other should not be separated.

14        7.        Documents not otherwise responsive to this Request shall be produced

15    if such documents mention, discuss, refer to, or explain the documents which are

16    called for by this Request, or if such documents are attached to documents called

17    for by this Request and constitute routing slips, transmittal memoranda, or letters,

18    comments, evaluations or similar materials.

19        8.        To the extent you withhold the production of documents pursuant to a

20    claim of attorney-client privilege, please prepare and produce a "privilege log"

21    which shall include the following information, to the extent that providing such

22    information will not destroy the privilege: (1) the document's Bates stamp number;

23    (2) the date of the document; (3) the name, job title or capacity of all persons

24    authoring or receiving the document, and the relationship between those persons;

25    (4) a brief description of the subject matter of the document; (5) whether the

26    primary purpose of the document was to seek or provide legal advice or services;

27    (6) whether the document or communication was transmitted in confidence; (7) the

28    nature of the privilege claimed; and (8) a brief statement as to why, under the law,

1   the document is privileged.  If you claim a document is protected from disclosure as

2   "attorney work product,' please also provide the following information, in addition

3   to the foregoing:  (9) whether the document contains an attorney's impressions,

4   conclusions, opinions or legal research or theories; and (10) whether the document

5   contains evidentiary material, such as witness statements, or the identify or location

6   of physical evidence, documents, or witnesses; and (11) whether the author has at

7   any time been designated as a prospective trial witness by you or your predecessor-

8   in-interest, or corporate affiliate in any action.

9        9.    If you otherwise object to the production of any documents or contend

10  that any document is excludable from production in discovery for any reason, for

11  each such document:

12              (a)    Identify the document by the exact name or title;

13              (b)    State its general subject matter;

14              (c)    State its date;

15              (d)    Identify its author(s) and recipient(s), if any;

16              (e)    Identify each and every other person who prepared or

17  participated in the preparation of the document;

18              (f)    Identify each and every other person from whom the document

19  was received;

20              (g)    State the present location of the document and all copies thereof;

21              (h)    State each objection and the grounds for each objection and

22  exclusion; and

23              (i)    Identify each person having knowledge of the factual basis on

24  which each such privilege or objection is based.  "Identify" means that you are to

25  state each person's full name, the name of his or her employer, and that person's last

26  known residence and business address and telephone number.

27

28

1  Dated: December 3, 2012                    BLECHER & COLLINS, P.C.

2

3                                             By:

4                                             Attorneys for Applicant SHAHROKH
                                              MIRESKANDARI
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 7 -

27

# EXHIBIT 2

Case 2:12-cv-10310-DSF-E    Document 26    Filed 02/04/13    Page 47 of 57    Page ID
#:704
Case 3:12-cv-02865-IEG-DHB   Document 1-1   Filed 12/03/12   Page 14 of 15

1  MARKS & SOKOLOV, LLC
   BRUCE S. MARKS (*Pro Hac Vice* pending)
2  1835 Market Street, 28th Floor
   Philadelphia, PA 19103
3  Telephone: (215) 569-8901
   Facsimile: (215) 569-8912
4  Marks@mslegal.com

5  BLECHER & COLLINS, P.C.
   MAXWELL M. BLECHER (SB# 026202)
6  515 South Figueroa Street, Suite 1750
   Los Angeles, California 90071-3334
7  Telephone: (213) 622-4222
   Facsimile: (213) 622-1656
8  mblecher@blechercollins.com

9  Attorneys for Applicant SHAHROKH MIRESKANDARI

10

11              **UNITED STATES DISTRICT COURT**

12              **SOUTHERN DISTRICT OF CALIFORNIA**

13  *In re*                              | CASE NO.

14  Application of                       |
                                         | **[PROPOSED] ORDER GRANTING**
15  SHAHROKH MIRESKANDARI,               | **EX PARTE APPLICATION OF**
                                         | **SHAHROKH MIRESKANDARI**
16          Applicant.                   | **PURSUANT TO 28 U.S.C. § 1782**
    -------------------------------------|
17
    RE APPEAL IN THE:                    |
18  HIGH COURT OF JUSTICE,               |
    QUEEN'S BENCH DIVISION               |
19  ADMINISTRATIVE COURT,                |
    LONDON ENGLAND                       |
20
                                         |
21  SHAHROKH MIRESKANDARI,               |

22          Appellant,                   |

23  SOLICTORS REGULATION                 |
    AUTHORITY,                           |
24                                       |
            Respondent.                  |
25  -------------------------------------|

26      Upon consideration of the Ex Parte Application of Shahrokh Mireskandari

27  to take discovery pursuant to 28 U.S.C. § 1782 (the "Application"), the

28  Declaration of Bruce S. Marks and Expert Legal Opinion of James Stuart,

---

                                    1

1  including all exhibits thereto, and the Memorandum of Points and Authorities

2  submitted on behalf of Applicant, and for good and sufficient cause having been

3  shown, IT IS HEREBY ORDERED that the Application is GRANTED.  IT IS

4  FURTHER ORDERED that the Court authorizes Applicant to serve the form of

5  subpoena attached to its Application and to conduct any follow-up discovery

6  relevant to the subpoena which may be required.

7  **IT IS SO ORDERED.**

8  Dated: December    , 2012                    _____

9                                              United States District Court Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

*In re*

Application of

SHAHROKH MIRESKANDARI,

                        Applicant,

v.

RE APPEAL IN THE: HIGH COURT OF
JUSTICE, QUEEN'S BENCH DIVISION,
ADMINISTRATIVE COURT, LONDON
ENGLAND

SHAHROKH MIRESKANDARI

                        Appellant,

SOLICITORS REGULATION AUTHORITY

                        Respondent.

Civil No.    12-cv-2865-IEG (DHB)

**ORDER:**

**(1) GRANTING IN PART
APPLICANT'S EX PARTE
APPLICATION PURSUANT TO 28
U.S.C. § 1782 [ECF No. 1];**

**(2) DENYING AS MOOT APPLICANT'S
REQUEST FOR ORAL ARGUMENT
[ECF No. 10]; and**

**(3) DENYING AS MOOT APPLICANT'S
EX PARTE APPLICATION FOR
EXPEDITED RESOLUTION [ECF No.
15]**

/ / /
/ / /
/ / /
/ / /
/ / /

- 1 -

12cv2865-IEG (DHB)

On December 3, 2012, Shahrokh Mireskandari ("Applicant") filed an *ex parte*[1] application for an order authorizing discovery in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782. (ECF No. 1.) On December 6, 2012, District Judge Irma E. Gonzalez ordered that Solicitors Regulation Authority ("Respondent") show cause in writing why the requested relief should not be issued. (ECF No. 6.) On December 10, 2012, Respondent filed a response in opposition to Applicant's *ex parte* application. (ECF No. 7.) On December 11, 2012, Judge Gonzalez referred the disposition of the *ex parte* application to Magistrate Judge David H. Bartick pursuant to 28 U.S.C. § 636(b)(1)(A). (ECF No. 8.) On December 12, 2012, Applicant filed a request for oral argument. (ECF No. 10.) On December 17, 2012, Applicant filed a reply to Respondent's opposition. (ECF No. 12.) On December 18, 2012, Applicant filed an *ex parte* application for expedited resolution of his § 1782 application. (ECF No. 15.)

Based on a careful review of the parties' papers, and for the reasons discussed below, Applicant's *ex parte* § 1782 application to conduct discovery in aid of a foreign proceeding is **GRANTED IN PART** subject to the limitations discussed below. Further, Applicant's request for oral argument and request for expedited resolution are **DENIED AS MOOT.**

## I. BACKGROUND

Applicant is a U.S. citizen residing in Los Angeles, California. Applicant's request for discovery in aid of a foreign proceeding relates to an appeal pending before the High Court of Justice, Queen's Bench Division, Administrative Court, in London, England. Specifically, Applicant is appealing a June 2012 decision by the Solicitors Disciplinary Tribunal ("Tribunal") revoking his license to practice law in England. The Tribunal's decision was made *in abstentia* in an administrative proceeding brought by Respondent, a statutory body that regulates the practice of law in England and Wales, when Applicant failed to appear at the disciplinary proceedings after the Tribunal had rejected his request for adjournment based on his medical condition.

On April 19, 2012, in connection with Applicant's request for adjournment, the Tribunal appointed Dr. Joseph Scoma, a resident of San Diego, California, as an independent expert to determine

---

[1] The Court agrees with Applicant's unopposed argument that 28 U.S.C. § 1782 may be properly made on an *ex parte* basis. *See In Re Letters Rogatory From The Tokyo District, Toyko*, 539 F.2d 1216, 1219 (9th Cir. 1976) (granting § 1782 request on *ex parte* basis and noting that witnesses subject to discovery requests "can and have raised objections and exercised their due process rights by motions to quash the subpoenas.").

1    whether Applicant's medical condition prevented him traveling to England for the disciplinary

2    proceedings. Dr. Scoma reviewed Applicant's medical records and opined that his medical condition

3    did not prevent him from traveling. The Tribunal accepted Dr. Scoma's opinion, despite the fact that

4    he did not conduct a physical examination of Applicant, and based the denial of Applicant's request for

5    adjournment on the opinion of Dr. Scoma.

6         In the pending appeal, Applicant contends that Dr. Scoma was *not* independent. Rather,

7    Applicant contends that Respondent and its attorneys engaged in numerous improper *ex parte*

8    communications with Dr. Scoma that resulted in Dr. Scoma believing that he was acting as an expert

9    on behalf of Respondent rather than as an independent expert. Applicant further contends that Dr.

10   Scoma's opinion was biased and should not have been considered by the Tribunal, and that Dr. Scoma's

11   bias against Applicant resulted in his unjustified refusal to perform a physical examination of Applicant

12   prior to preparing his expert opinion.

13        Applicant now seeks permission from the Court, pursuant to § 1782, to serve a subpoena on Dr.

14   Scoma for deposition testimony and documents. Applicant contends the discovery is relevant and

15   critical to its pending appeal of the disciplinary proceedings. Applicant also contends that the discovery

16   is necessary to oppose a pending request by Respondent that the appeal be stayed until Applicant posts

17   approximately $485,000 to secure the costs on appeal.[2] Applicant contends that because he is

18   financially unable to post security, if Respondent's request is granted his appeal will effectively be

19   dismissed.

20        Respondent opposes Applicant's request that it be permitted to seek deposition testimony and

21   documents from Dr. Scoma.

## II. DISCUSSION

22   "The twin aims of [§ 1782] are to provide 'efficient means of assistance to participants in

23   international litigation in our federal court' and to encourage 'foreign countries by example to provide

24   similar means of assistance to our courts.'" *In Re: The Application of Ishihara Chem. Co., Ltd.*, 251

25   F.3d 120, 124 (2d Cir. 2001). Under § 1782, interested parties may obtain discovery for use in foreign

26   

27   

28        [2] According to Applicant, in England, courts may require a party to provide security for costs
     before litigation may proceed.

Case 2:12-cv-10310-DSF-E   Document 26   Filed 02/04/13   Page 53 of 57   Page ID
#:710
Case 3:12-cv-02865-IEG-DHB   Document 16   Filed 12/20/12   Page 4 of 8

1   litigation from persons located within the United States as long as the following three statutory

2   requirements are satisfied: (1) the application is filed in the district wherein the person resides; (2) the

3   discovery is sought for use in a proceeding in a foreign tribunal; and (3) the application is made by a

4   foreign tribunal or "any interested person" in those foreign proceedings.[3]  However, even where these

5   statutory requirements are satisfied, district courts are not required to grant the requested discovery. *See*

6   *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("a district court is not required

7   to grant a § 1782(a) discovery application simply because it has the authority to do so.").  Rather, the

8   Supreme Court has identified several factors to guide a district court's discretion in analyzing an

9   application under 28 U.S.C. § 1782: (1) whether "the person from whom discovery is sought is a

10  participant in the foreign proceedings;" (2) "the nature of the foreign tribunal, the character of the

11  proceedings underway abroad, and the receptivity of the foreign government or the court or agency

12  abroad to U.S. federal-court judicial assistance;" (3) "whether the § 1782(a) request conceals an attempt

13  to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United

14  States;" and (4) whether the discovery is "unduly intrusive or burdensome." *Id.* at 264-65.

15          Here, Applicant contends that § 1782's three statutory requirements have been met.  Respondent

16  makes no argument otherwise.  The Court agrees with Applicant.  Thus, whether Applicant's request

17

18  _____

    [3] 28 U.S.C § 1782(a) states:

19

20              The district court of the district in which a person resides or is found may
            order him to give his testimony or statement or to produce a document or
21          other thing for use in a proceeding in a foreign or international tribunal,
            including criminal investigations conducted before formal accusation. The
22          order may be made pursuant to a letter rogatory issued, or request made, by
            a foreign or international tribunal or upon the application of any interested
23          person and may direct that the testimony or statement be given, or the
            document or other thing be produced, before a person appointed by the court.
24          By virtue of his appointment, the person appointed has power to administer
            any necessary oath and take the testimony or statement. The order may
25          prescribe the practice and procedure, which may be in whole or part the
            practice and procedure of the foreign country or the international tribunal, for
26          taking the testimony or statement or producing the document or other thing.
            To the extent that the order does not prescribe otherwise, the testimony or
27          statement shall be taken, and the document or other thing produced, in
            accordance with the Federal Rules of Civil Procedure.

28              A person may not be compelled to give his testimony or statement or to
            produce a document or other thing in violation of any legally applicable
            privilege.

- 4 -

1     should be granted requires an analysis of the discretionary factors discussed in *Intel Corp.*

2          First, where the person from whom discovery is sought is a participant in the foreign proceeding,

3     "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from

4     a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing

5     before it, and can itself order them to produce evidence. . . . In contrast, nonparticipants in the foreign

6     proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available

7     in the United States, may be unobtainable absent § 1782(a) aid." *Id.* at 264 (citations omitted). Here,

8     the Court rejects Respondent's contention that Dr. Scoma is "effectively" a participant in the foreign

9     disciplinary proceedings. Although Dr. Scoma served as an expert in that proceeding and his opinion

10    provided the basis for the Tribunal's decision to deny the request for adjournment, he is not subject to

11    the English court's jurisdiction.

12         Second, as Respondent has successfully argued on other occasions, English courts are generally

13    receptive to judicial assistance from the United States. (*See* ECF No. 1-4 at 46, 59, 74 (citing *In re*

14    *Bayer AG*, 146 F.3d 188, 194-95 (3rd Cir. 1998) (describing holding in English court that English

15    litigants were entitled to obtain discovery in a foreign country including through the use of § 1782).)

16    Moreover, disciplinary proceedings against solicitors appropriately trigger § 1782. *See Intel Corp.*, 542

17    U.S. at 249 (noting that Congress intended that § 1782 not be limited to "proceedings before

18    conventional courts" but that the statute also applies to foreign "administrative and quasi-judicial

19    proceedings.") (citations omitted).

20         Third, the Court is not required to determine whether the evidence obtained from Dr. Scoma

21    would be discoverable or admissible in the English appellate proceedings. *See id.* at 253-54 (rejecting

22    argument that § 1782 contains a "foreign-discoverability requirement"); *In re Request for Judicial*

23    *Assistance from the Seoul Dist. Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) ("[F]ederal courts,

24    in responding to [§ 1782] requests, should not feel obliged to involve themselves in technical questions

25    of foreign law relating to . . . the admissibility before [foreign] tribunals of the testimony or material

26    sought."). Notwithstanding, much of the parties' arguments to this Court relate to whether the evidence

27    would be admissible in the foreign proceedings and, even less important to this Court, whether the

28    evidence provides a substantive basis for overturning the Tribunal's decision. Such issues are

12cv2865-IEG (DHB)

Case 2:12-cv-10310-DSF-E    Document 26    Filed 02/04/13    Page 55 of 57    Page ID
#:712
Case 3:12-cv-02865-IEG-DHB    Document 16    Filed 12/20/12    Page 6 of 8

1    appropriately suited for the English courts.  Here, the Court need only determine whether discovery is

2    appropriate under § 1782.  As to the third *Intel* factor, the Court does not believe Applicant is attempting

3    to circumvent English evidence-gathering restrictions.

4         Fourth, the Court finds Applicant's three proposed categories of documents in the subpoena to

5    Dr. Scoma are not unduly intrusive and burdensome.  Dr. Scoma is certainly free to object to these

6    requests as appropriate, and there indeed appears, at a minimum, to be grounds for narrowing the scope

7    of the requests.  For example, request number 2 seeks privileged attorney-client communications,

8    especially in light of the Bird Marella law firm's representation of Dr. Scoma in connection with the

9    subpoena served on Dr. Scoma in state proceedings entitled *Paul Baxendale-Walker v. Barrington*

10   *Mayne et al.*, Los Angeles Superior Court Case No. BC467070.  In addition, all of the requests are

11   potentially subject to objection based on the expansive time frame sought by Applicant (*i.e.*, January

12   1, 2000 through the present).  However, Dr. Scoma is in the best position to raise appropriate objections,

13   and the Court is not inclined to limit the scope of the subpoena's document requests at this time.

14        The Court notes an inconsistency between Applicant's proposed subpoena and his points and

15   authorities in support of his *ex parte* application.  Contrary to the points and authorities (*see* ECF No.

16   1 at 15), Applicant's proposed subpoena does not seek production of Dr. Scoma's 2012 insurance policy

17   (*see* ECF No. 1-1 at 6).  However, even if the subpoena had included this as a document request, the

18   Court would require its removal because its production would be unduly intrusive.  That is not to say

19   that Applicant could not question Dr. Scoma during deposition on whether he was insured during the

20   time period relevant to his review of Applicant's medical records.

21        Next, although the subpoena does not identify the scope of deposition topics, Applicant indicates

22   in his points and authorities that he seeks to depose Dr. Scoma on issues related to "the *ex parte*

23   communications with [Respondent] (including his own emails); his relationship with Bird Marella (and

24   whether [Respondent] secretly promised that it would provide legal counsel to him while he was the

25   [Tribunal's] independent expert); and his understanding of his duties as an independent expert."  (ECF

26   No. 1 at 15:16-19.)  The Court finds that these deposition topics are appropriate, as they are relevant to

27   Applicant's claim that Respondent improperly fostered bias of Dr. Scoma against Applicant.  However,

28   for the reasons stated above, the Court notes there are potential attorney-client privilege concerns that

1    may be appropriately addressed at the deposition of Dr. Scoma.

2         Finally, the Court accepts Respondent's argument that Applicant's request to conduct follow-up

3    discovery "is plainly overbroad and impermissible under § 1782." Section 1782 permits the Court to

4    authorize deposition testimony and production of documents. However, the statute does not authorize

5    a vague and open-ended period of "follow-up discovery." Applicant's reliance on *In re Application of*

6    *Chevron Corp.*, No. 10cv1146-IEG (WMc), 2010 U.S. Dist. LEXIS 94396 (S.D. Cal. Sept. 10, 2010),

7    is unavailing. In that case, leave to engage in follow-up forensic discovery was only granted following

8    a lengthy and complicated procedural history, and after the court-ordered document production had been

9    shown to be incomplete. Leave to engage in speculative follow-up discovery at the outset of the instant

10   proceedings is inappropriate. The Court's ruling in this regard does not preclude Applicant from

11   seeking leave to propound additional discovery should Dr. Scoma's responses to the subpoena be

12   deficient.

13                      **III. CONCLUSION AND ORDER**

14        Based on the foregoing, IT IS HEREBY ORDERED:

15   1.    Applicant's *ex parte* application pursuant to 28 U.S.C. § 1782 for discovery in aid of a

16         foreign proceeding (ECF No. 1) is **GRANTED IN PART**. Applicant is permitted to

17         serve on Dr. Scoma the subpoena for deposition testimony and document production that

18         is attached to the application. Applicant shall also serve Dr. Scoma with a copy of this

19         order. However, Applicant's request to take "reasonable follow-up discovery once

20         responses to the subpoena are received" is **DENIED** as premature.

21   2.    The Court finds the application suitable for determination on the papers and without oral

22         argument in accordance with Civil Local Rule 7.1.d.1. Accordingly, Applicant's request

23         for oral argument (ECF No. 10) is **DENIED AS MOOT**.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

Case 2:12-cv-10310-DSF-E    Document 26    Filed 02/04/13    Page 57 of 57    Page ID
#:714
Case 3:12-cv-02865-IEG-DHB    Document 16    Filed 12/20/12    Page 8 of 8

3.      In light of the Court's order granting the application for discovery pursuant to § 1782,

Applicant's *ex parte* request for expedited resolution of the application is **DENIED AS**

**MOOT.**[4]

DATED:  December 20, 2012

DAVID H. BARTICK
United States Magistrate Judge

---

[4] The Court also declines to issue an expedited briefing and hearing schedule for any objections or motion to quash filed by Dr. Scoma in response to the subpoena.  The Federal Rules of Civil Procedure and this Court's Local Civil Rules provide adequate time for Applicant to obtain the discovery at issue in advance of his February 28, 2013 deadline to oppose Respondent's application to stay the appellate proceedings in England.